CV12 - 3690

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

FILED
CLERK

2012 JUL 26 AM 8:39

--------------------------------------------------------------------------X     Case No.

SARAH FAKHRUDIN, MONICA FAKHRUDIN, and
SELMA FAKHRUDIN,

U.S. DISTRICT COURT
EASTE**COMPLAINT**
OF NEW YORK

                                        Plaintiffs,

                    -against-

**PLAINTIFFS DEMAND**
**A TRIAL BY JURY**

OSI RESTAURANT PARTNERS, LLC, OS RESTAURANT
SERVICES, INC. *d/b/a "Outback Steakhouse,"* and JAMES
CONNOLLY, *Individually*,

HURLEY, J.

                                        Defendants.

--------------------------------------------------------------------------X

BOYLE, M.J.

     Plaintiffs, SARAH FAKHRUDIN, MONICA FAKHRUDIN, and SELMA FAKHRUDIN, by their attorneys, PHILLIPS & PHILLIPS, Attorneys at Law, PLLC, hereby complain of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1.    Plaintiffs complain pursuant to <u>Title VII of the Civil Rights Act of 1964</u>, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII") and the <u>New York State Human Rights Law</u>, New York State Executive Law §296 *et. seq.* ("NYSHRL"), and seek damages to redress the injuries Plaintiffs have suffered as a result of being **Sexually Harassed**, **Discriminated Against**, **Retaliated Against**, severely humiliated, mentally anguished, and emotionally and physically distressed **by their Employer solely on the Basis of Gender (Female) and Religion (Seventh-day Adventist Christianity).**

## JURISDICTION AND VENUE

2.  Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3.  The Court has supplemental jurisdiction over the claims of Plaintiffs brought under state law pursuant to 28 U.S.C. § 1367.

4.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon Defendants' residency within the Eastern District of New York.

## PROCEDURAL PREREQUISITES

5.  Plaintiffs filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6.  Plaintiff SELMA FAKHRUDIN received a Notice of Right to Sue from the EEOC, dated July 19, 2012, with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto.  This Action is being commenced within 90 days of receipt of said Right to Sue.

7.  Plaintiff MONICA FAKHRUDIN received a Notice of Right to Sue from the EEOC, dated July 19, 2012, with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto.  This Action is being commenced within 90 days of receipt of said Right to Sue.

8.  Plaintiff SARAH FAKHRUDIN received a Notice of Right to Sue from the EEOC, dated July 19, 2012, with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto.  This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

9.      That at all times relevant hereto, Plaintiff SARAH FAKHRUDIN ("SARAH") was a resident of the State of New York and the County of New York.

10.     That at all times relevant hereto, Plaintiff MONICA FAKHRUDIN ("MONICA") was a resident of the State of New York and the County of New York.

11.     That at all times relevant hereto, Plaintiff SELMA FAKHRUDIN ("SELMA") was a resident of the State of New York and the County of New York.

12.     That at all times relevant hereto, upon information and belief, Defendant OSI RESTAURANT PARTNERS, LLC ("OSI") was a foreign business corporation duly existing pursuant to, and by virtue of, the laws of the State of New York, with its headquarters located at 2202 North West Shore Boulevard, 5th Floor, Tampa, Florida 33607.

13.     That at all times relevant hereto, upon information and belief, Defendant OS RESTAURANT SERVICES, INC. ("OS RESTAURANT") was a foreign business corporation duly existing pursuant to, and by virtue of, the laws of the State of New York, with its headquarters located at 2202 North West Shore Boulevard, 5th Floor, Tampa, Florida 33607.

14.     At all times material, Defendant OS RESTAURANT is a wholly owned subsidiary of Defendant OSI, and is operated and managed by Defendant OSI.

15.     That at all times relevant hereto, Defendant OS RESTAURANT does business as "Outback Steakhouse," and owns and operates the "Outback Steakhouse" located at 1067 Old Country Road, Westbury, New York 11590.

3

16. That at all times relevant hereto, Plaintiff SARAH was an employee of Defendant OS RESTAURANT and Defendant OSI, working at "Outback Steakhouse," located at 1067 Old Country Road, Westbury, New York 11590.

17. That at all times relevant hereto, Plaintiff MONICA was an employee of Defendant OS RESTAURANT and Defendant OSI, working at "Outback Steakhouse," located at 1067 Old Country Road, Westbury, New York 11590.

18. That at all times relevant hereto, Plaintiff SELMA was an employee of Defendant OS RESTAURANT and Defendant OSI, working at "Outback Steakhouse," located at 1067 Old Country Road, Westbury, New York 11590.

19. That at all times relevant hereto, upon information and belief, Defendant JAMES CONNOLLY ("CONNOLLY") was a resident of the State of New York.

20. That at all times relevant hereto, Defendant CONNOLLY was an employee of Defendant OS RESTAURANT and Defendant OSI, holding the position of "Proprietor."

21. That at all times relevant hereto, Defendant CONNOLLY was Plaintiff SARAH's supervisor and had supervisory authority over Plaintiff SARAH.

22. That at all times relevant hereto, Defendant CONNOLLY was Plaintiff MONICA's supervisor and had supervisory authority over Plaintiff MONICA.

23. That at all times relevant hereto, Defendant CONNOLLY was Plaintiff SELMA's supervisor and had supervisory authority over Plaintiff SELMA.

24. Defendant OSI, Defendant OS RESTAURANTS, and Defendant CONNOLLY are collectively referred to herein as "Defendants."

## MATERIAL FACTS

25.  On or about May 3, 2010, Plaintiff SARAH began working for Defendants as a "Hostess" at Defendants' Outback Steakhouse, located at 1067 Old Country Road, Westbury, New York 11590, earning approximately $5.00 per hour plus tips.

26.  On or about October 3, 2010, Plaintiff MONICA began working for Defendants as a "Hostess" at Defendants' Outback Steakhouse, located at 1067 Old Country Road, Westbury, New York 11590, earning approximately $5.00 per hour plus tips.

27.  On or about February 9, 2012, Plaintiff SELMA began working for Defendants as a "Hostess" at Defendants' Outback Steakhouse, located at 1067 Old Country Road, Westbury, New York 11590, earning approximately $5.00 per hour plus tips.

28.  At all times relevant hereto, Plaintiff SARAH, Plaintiff MONICA, and Plaintiff SELMA have been exemplary employees and have always received compliments for their work performance.

29.  However, on an almost daily basis, **Defendants have consistently and continuously subjected Plaintiff SARAH, Plaintiff MONICA, and Plaintiff SELMA to sexual harassment and discrimination solely due to their gender (female)**, creating an extremely hostile and intimidating work environment.

30.  In or about late October 2010, Chris Forrester was hired as "Proprietor" and thus became Plaintiffs' new supervisor.

31.  Immediately upon his arrival, Mr. Forrester began harass Plaintiff SARAH on the basis of her gender and religion.  By way of example, Mr. Forrester would call her "stupid," would kick and shove her, would put her in headlocks, would pinch her arms, and would constantly question Plaintiff SARAH about her religion and accuse her of making it all up

just to get off of work.

32. While Plaintiff SARAH complained to him on numerous occasions and asked him to stop his unlawful behavior, rather than apologizing, he instead yelled at Plaintiff SARAH and made her feel like it was her fault.

33. Furthermore, Mr. Forrester would frequently grab and pinch Plaintiff MONICA's arm, hips, and ribs and would regularly curse at Plaintiff MONICA, calling her "stupid fucking idiot" and "fucking retard."

34. On or about September 2011, Plaintiff SARAH complained to Joanna Murphy, Defendants' Manager, that she didn't feel comfortable around Mr. Forrester and couldn't take his harassment any longer.

35. In or about September 2011, Plaintiff SARAH met with Vanessa Krentkowski, Defendants' Service Tech, and again complained about Mr. Forrester's unlawful sexual harassment and discrimination.

36. In or about late November 2011, Mr. Forrester resigned from his position, and **on or about December 3, 2011, Defendant CONNOLLY became the new "Proprietor" of the restaurant, and thus also became Plaintiffs' new direct supervisor.**

37. **Unfortunately, soon after Defendant CONNOLLY started, he continued Mr. Forrester's sexual harassment against Plaintiffs**, picking up where Mr. Forrester left off. By way of example, Defendant CONNOLLY regularly calls Plaintiff SARAH "beautiful," frequently asks her for kisses on the cheek, forcibly holds her hand even though she resists, and regularly kisses her hand.

38. Moreover, whenever Defendant CONNOLLY and Plaintiff SARAH are standing behind the host stand, Defendant CONNOLLY always intentionally rubs her hands and legs

where nobody can see.

39. In addition, Defendant CONNOLLY always tells Plaintiff SARAH, **"I love you. You should bring your pajamas over,"** inferring that he wants Plaintiff SARAH to sleep at his home. Plaintiff SARAH is extremely offended and intimidated by these creepy comments.

40. In or about January 2012, while Plaintiff SARAH was packing food, **Defendant CONNOLLY slapped her buttocks**, and when she turned around, he simply started to laugh, at which point Plaintiff SARAH again told him to stop touching her. Despite this, Defendant CONNOLLY has nonetheless continued with his sexual harassment.

41. In or about February 2012, after Plaintiff SARAH asked a busboy to clean a table, Defendant CONNOLLY told the busboy, **"You don't have to listen to that bitch,"** causing Plaintiff SARAH to cry.

42. In or about March 2012, Defendant CONNOLLY purposefully stood within inches of Plaintiff SARAH's face and asked her, "Am I making you uncomfortable," to which Plaintiff SARAH replied, "Yes." Shockingly, Defendant CONNOLLY then said "good," and **proceeded to rub up against her**. In fact, it wasn't until a co-worker observed Defendant CONNOLLY's actions and told him to stop that he finally did.

43. In or about March 2012, as Plaintiff SARAH was sitting in a booth, Defendant CONNOLLY sat next to her and suddenly **started to rub Plaintiff SARAH's inner thighs**. Plaintiff SARAH felt especially scared and intimidated, as Defendant CONNOLLY effectively trapped Plaintiff SARAH in the booth. Plaintiff SARAH was utterly horrified and distraught.

44. Also rather despicable, in or about April 2012, Defendant CONNOLLY actually told

Plaintiff SARAH that he couldn't touch the other female hostesses because "they're new and don't know me," implying that he is allowed to sexually harass and touch Plaintiff SARAH because she already knows him.

45. Then, again on or about April 18, 2012, Defendant CONNOLLY actually had the audacity to tell Plaintiff SARAH, **"Sarah, you're eye candy."**

46. Also on or about April 18, 2012, Defendant CONNOLLY told Plaintiff SARAH that, "everyone must work Mothers' Day. I don't want to hear that you can't work or any shit like that." However, Defendant CONNOLLY only said this to Plaintiff SARAH in retaliation for rejecting his sexual advances, as Defendant CONNOLLY knew that Plaintiffs' mother recently passed away. Although Plaintiff SARAH attempted to ignore him, Defendant CONNOLLY made sure to tap her and say, "You heard me," causing Plaintiff SARAH to become distraught.

47. **Defendant CONNOLLY has also constantly sexually harassed Plaintiff SARAH's sisters, Plaintiff MONICA and Plaintiff SELMA.**

48. By way of example, in or about early 2012, Defendant CONNOLLY started to regularly ask Plaintiff MONICA, **"Do you have a boyfriend?  When are we going out? I will take you somewhere nice not like here, somewhere all fancy and shit."**

49. Even creepier, while speaking in a baby voice, Defendant CONNOLLY frequently whispers into Plaintiff MONICA's ear, **"Monica I really, really like you.  I don't know what to do.  When are we seriously going on a date?  Can you come over tonight?"**

50. Moreover, Defendant CONNOLLY has even touched Plaintiff MONICA on her chest and regularly looks for excuses to do it again. One time he even said to Plaintiff MONICA, **"whoa your shirt is way too small.  Your chest is too big for the shirt,"** while

**inappropriately touching Plaintiff MONICA's shirt buttons**.

51. When Plaintiff MONICA asked for an extra small work shirt, Defendant CONNOLLY stated, "No way! Hunny no way! You won't fit in an extra small," while making hand jesters implying her chest was too big for the extra small shirt.

52. Sometimes **Defendant CONNOLLY will grab Plaintiff MONICA's hand, kiss it multiple times, and tell her that he loves her**, even though Plaintiff MONICA always pulls away and makes faces showing that she disapproves and is frightened.

53. Defendant CONNOLLY also constantly whispers dirty comments to Plaintiff MONICA such as, **"I love you. You look hot today,"** and always blows her a kiss.

54. Other times, Defendant CONNOLLY will approach Plaintiff MONICA from behind, **give her a massage, rub her back up and down, and kiss her on her neck**.

55. On another occasion, Defendant CONNOLLY whispered in Plaintiff MONICA's ear, **"The keys are under the mat. Meet me at my house. I will try not to be late. Bring your pajamas."** Plaintiff MONICA was horrified to hear this.

56. Furthermore, after Plaintiff MONICA brought a guy friend to Defendants' restaurant to get something to eat, Defendant CONNOLLY told her, **"Don't bring that douche bag here anymore."** Defendant CONNOLLY now constantly asks Plaintiff MONICA if they broke up, tells her that he is jealous, and that he hates her friend.

57. In addition, Defendant CONNOLLY always refers to **new female employees as "fresh meat."**

58. On or about April 18, 2012, when Defendant CONNOLLY saw Plaintiff MONICA talking to a male server, **he grabbed her, pulled her towards him, and began to hug her tightly**.

59.   On or about April 18, 2012, when Plaintiff SELMA arrived at work, Defendant CONNOLLY asked her, **"Did you miss me?"**  Confused, Plaintiff SELMA did not reply, but when Defendant CONNOLLY again asked her in an angry tone, she replied "yes" out of fear, to which he responded, **"good because I missed you too."**

60.   On or about April 18, 2012, as Plaintiff SELMA was walking to the bathroom, she noticed Defendant CONNOLLY staring at her sister, Plaintiff MONICA, like piece of meat, and when Plaintiff SELMA walked over, Defendant CONNOLLY told Plaintiff SELMA, **"Walk around me bitch!"**  Plaintiff SELMA was horrified by such a remark.

61.   On or about April 18, 2012, in front of a customer, Defendant CONNOLLY told Plaintiff SELMA to **scratch his back** and asked for her phone number, and when she refused, he just continued to badger her.

62.   On or about April 19, 2012, Defendant CONNOLLY called Plaintiff MONICA's name and said, **"I love you"** as he walked away laughing.

63.   On or about April 19, 2012, Plaintiff SELMA went to pick up her Tipshare, when Defendant CONNOLLY told her, **"You look very sexy in that nurses' outfit.  Do you make house calls?"**

64.   When Plaintiff SELMA told Defendant CONNOLLY that she was **only seventeen (17) years old**, he said, **"I can get arrested for the things that are going through my head ... but that's just me!"**

65.   Furthermore, Defendant CONNOLLY once took Plaintiff SELMA's hand and told her to come outside for a walk, but when Plaintiff SELMA responded "no," he just pulled on her hand harder, ultimately pulling her outside by her hand.  As Defendant CONNOLLY and Plaintiff SELMA walked back inside, he said "why aren't you really holding my

hand?" and proceeded to tightly hold her hand and walk around the restaurant.  When Plaintiff SELMA told Defendant CONNOLLY that he was being mean and intimidating, Defendant CONNOLLY's only response was, **"but you're mine and I don't like to share."**

66.   Defendant CONNOLLY also randomly kisses Plaintiff SELMA on the cheek, and has even told Plaintiff SELMA, **"When you get off, I'll take you home.  Tell your dad not to come because you have a ride home."**

67.   In addition to making sexual advances towards Plaintiffs, Defendant CONNOLLY also constantly makes sexually explicit comments about female customers to Plaintiff SARAH.  For example, Defendant CONNOLLY always asks Plaintiff SARAH to check the tables and let him know if they are either "1 for hot" or "2 for really hot."

68.   Furthermore, in or about March 2012, referring to one of the customers, Defendant CONNOLLY told Plaintiff SARAH that, **"She can suck my dick."**

69.   In or about April 2012, as Defendant CONNOLLY was staring at a female customer around sixteen (16) years old, he turned to Plaintiff SARAH and said, **"Mama Mia, I would love that."**  Plaintiff SARAH was absolutely disgusted by these constant discriminatory and sexually harassing comments.

70.   **Defendant CONNOLLY also discriminates against and harasses Plaintiffs solely due to Plaintiffs' religion (Seventh-day Adventist Christianity).**

71.   By way of example, on or about April 18, 2012, after Defendant CONNOLLY scheduled Plaintiff SARAH to work on a Saturday, Plaintiff SARAH told him that she could not work on Saturdays because of her religion.  In response, Defendant CONNOLLY stated, **"Oh yeah, you're going to fry or some shit."**

11

72.    Furthermore, when Plaintiff MONICA went to pick up her paycheck on a Friday morning, Defendant CONNOLLY said, **"Aren't you going to get struck by lightning because you came in to get her tip-share on Friday?  Aren't you going to burn in hell or something?"**

73.    On another occasion, as Plaintiff MONICA explained the Sabbath to Defendant CONNOLLY, he responded, **"Do you really follow that?  You must be miserable. That's stupid.  Good luck finding someone to marry you."**

74.    **On or about May 3, 2012, Plaintiff SARAH complained to Joanna Murphy, Defendants' Manager, about Defendant CONNOLLY's constant and unrelenting sexual harassment and retaliation.**

75.    On or about May 13, 2012, while Plaintiff SELMA's purse was in the back office, someone who had access to the back office stole a significant sum of money from her purse.

76.    It was at this point that Plaintiffs started to realize that if they were going to progress and be successful working for Defendants, they would have to accept being the subject of sexual harassment.  It became clear to Plaintiffs that Defendant CONNOLLY had no intention of ending the hostile work environment, and would instead continue with his sexually harassing behavior and comments.

77.    **As such, on or about May 13, 2012, Plaintiff SELMA and Plaintiff MONICA notified Defendants that due to Defendant CONNOLLY's unrelenting sexual harassment, they felt they had no choice but to resign from their positions.**

78.    Plaintiff SELMA and Plaintiff MONICA felt that any ordinary person in their shoes would have felt compelled to resign from their employment.

79.   **As a result of the patently and brazenly illegal behavior described herein, Plaintiff SELMA and Plaintiff MONICA were thus constructively discharged from their employment effective May 13, 2012.**

80.   **Plaintiff SARAH is still employed by Defendants and is currently being forced to endure a sexually harassing and discriminatory working environment.**

81.   This pattern of sexual harassment, discrimination and retaliation is ongoing and continuous.

82.   Despite Plaintiffs' opposition to the sexual harassment, Defendants continued the discrimination and hostile working environment.

83.   Plaintiffs have been humiliated by the actions of Defendants.

84.   Plaintiffs have begun to suffer from severe anxiety and depression as a result of Defendants' discriminating and harassing work environment.

85.   **Plaintiffs were treated different (sexually harassed and discriminated against) by a supervisor, Defendant CONNOLLY, because of their gender (female) and religion (Seventh-day Adventist Christianity).**

86.   **But for the fact that Plaintiffs are females and Seventh-day Adventist Christians, Defendant CONNOLLY would not have treated them different (sexually harassed and discriminated against).**

87.   Defendant CONNOLLY's actions were unsolicited, unwelcome and offensive.

88.   Plaintiffs have been unlawfully discriminated against, humiliated, retaliated against, degraded and belittled, and as a result, suffers loss of rights, emotional distress, loss of income, and earnings.

89.   Plaintiffs' work performance has been, upon information and belief, above average

during the course of employment with Defendants.

90.  The above are just some of the acts of sexual harassment, discrimination and retaliation that Plaintiffs have experienced on a regular and continual basis during their tenure with Defendants.

91.  Plaintiffs have been regularly exposed to a hostile work environment by Defendants.

92.  Defendants' hostile actions have created an unlawfully hostile working environment that no reasonable person would tolerate.

93.  Defendants' actions and conduct were and are intentional and intended to harm Plaintiffs.

94.  All Defendants **have knowledge and/or acquiesce** in the discrimination and sexual harassment.

95.  As a result of Defendants' actions, Plaintiffs feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

96.  As a result of Defendants' discriminatory and intolerable treatment of Plaintiffs, they are suffering from severe emotional distress and physical ailments.

97.  As a result of the acts and conduct complained of herein, Plaintiffs have suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

98.  As a result of the above, Plaintiffs have been damaged in an amount which exceeds the jurisdiction limits of all lower Courts.

99.  Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiffs demand Punitive Damages as against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

100. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

101. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq.*, for relief based upon the unlawful employment practices of the above-named Defendants.   Plaintiffs complain of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender (sexual harassment) and religion.

102. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiffs because of their gender (sexual harassment) and religion.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

103. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

104. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

105. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiffs with respect to the terms, conditions or privileges of employment because of their opposition to the unlawful employment practices of Defendants.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
## UNDER NEW YORK STATE EXECUTIVE LAW

106. Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

107. New York State Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice:   (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, … to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

108. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiffs because of their gender (sexual harassment) and religion.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER NEW YORK STATE EXECUTIVE LAW

109. Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

110. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any

practices forbidden under this article."

111.   Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiffs because of Plaintiffs' opposition to the unlawful employment practices of Plaintiffs' employer.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW

112.   Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

113.   New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

114.   Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## JURY DEMAND

115.   Plaintiffs request a jury trial on all issues to be tried.


**WHEREFORE**, Plaintiffs respectfully request a judgment against the Defendants:

A.   Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq.* and New York State Human Rights Law, New York State Executive Law §296 *et. seq.*, in that Defendants sexually harassed, discriminated against, and retaliated against Plaintiffs on the basis of their gender and religion;

17

B. Awarding damages to Plaintiffs for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make them whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiffs compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to their reputation in an amount to be proven;

D. Awarding Plaintiffs punitive damages;

E. Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.


Dated: New York, New York
      July 24, 2012


                  **PHILLIPS & PHILLIPS,**
                  **ATTORNEYS AT LAW, PLLC**


By: _____
           William K. Phillips, Esq.
           *Attorneys for Plaintiffs*
           30 Broad Street, 35th Floor
           New York, New York 10004
           (212) 248-7431
           Email: Tpglaws@yahoo.com

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Selma Fakhrudin<br>78 Sackett Street<br>Hicksville, NY 11801 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐   On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2012-02458 | Jean E. Mulligan,<br>Investigator | (212) 336-3748 |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐   More than 180 days have passed since the filing of this charge.

☒   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Kevin J. Berry*     7-19-12.

Enclosures(s)

**Kevin J. Berry,**
**District Director**

*(Date Mailed)*

cc:

| OSI RESTAURANT PARTNERS, LLC & OS<br>RESTAURANT SERVICES, INC.<br>2202 North West Shore Boulevard, 5th Floor<br>Tampa, FL 33607 | Phillips & Phillips<br>30 Broad Street, 35th Floor<br>New York, NY 10004 |
|---|---|

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Monica Fakhrudin**<br>**78 Sackett Street**<br>**Hicksville, NY 11801** | From: | **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2012-02459** | **Jean E. Mulligan,**<br>**Investigator** | **(212) 336-3748** |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Kevin J. Berry*                          7-19-12
**Kevin J. Berry,**                       *(Date Mailed)*
**District Director**

Enclosures(s)

cc:
**OSI RESTAURANT PARTNERS, LLC and OS**          **Phillips & Phillips**
**RESTAURANT SERVICES, INC.**                    **30 Broad Street, 35th Floor**
**2202 North West Shore Boulevard, 5th Floor**   **New York, NY 10004**
**Tampa, FL 33607**

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: **Sarah Fakhrudin**<br>**78 Sackett Street**<br>**Hicksville, NY 11801** | From: **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |
|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2012-02460** | **Jean E. Mulligan,**<br>**Investigator** | **(212) 336-3748** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_Kevin J. Berry_
**Kevin J. Berry,**
**District Director**

7-19-12
*(Date Mailed)*

cc:

**OSI RESTAURANT PARTNERS, LLC & OS**
**RESTAURANT SERVICES, INC.**
**2202 North West Shore Boulevard, 5th Floor**
**Tampa, FL 33607**

**Phillips & Phillips**
**30 Broad Street, 35th Floor**
**New York, NY 10004**